This next case is Phyllis Edwards v. Dothan City Schools. Jacob Fuller is here for the appellant, Edwards. Wilson Green is here for the appellees. And, Mr. Fuller, you may begin. Can you all hear me? Is that good? May it please the Court, I'm Jacob Fuller. I represent the appellant, Phyllis Edwards. She was the former school superintendent for Dothan City Schools in Dothan, Alabama. On September 8, 2020, she submitted her intent to resign pursuant to the contract between the parties, and on September 14, we contend that the board terminated her and deprived her of due process. This is a 1983 procedural due process case. The district court ruled with the appellees, obviously, saying that since post-deprivation remedies were available under Parrott v. Taylor, that it was no difference if her pre-deprivation rights were violated. It's clear to me, and I hope it will be clear to this Court, that the Parrott case and the Parrott doctrine or rule has no bearing on this case. I didn't hear you. What was that last part? The Parrott doctrine or rule, however you want to call it, has no implication on this case. The Parrott rule involves a unique set of facts wherein it was, as the Court stated, impracticable if not impossible to afford pre-deprivation process to the injured party. In that case, we've got a vastly different set of facts. You've got a prison inmate and a prison guard mishandled or lost some mail intended for the prison inmate. The Court's reasoning is, how in the world are you going to provide pre-deprivation for a loss of property when a piece of mail gets mishandled? Again, that's starkly different from this case. It's more of a general rule, though, Parrott establishes, that if the taking of property without any pre-deprivation process, without any due process, is the result of a, it uses the word, random and unauthorized act by a state employee, as long as the state makes post-deprivation remedies available, due process is satisfied. Why isn't that not the rule? I would respectfully disagree and say that that is the exception. The rule is, you have to provide pre-deprivation process unless post-deprivation is not practical or impossible, as in Parrott and Hudson and that line of cases. Was this a random act by a state employee? No. Again, she submitted her intent to resign. The contract laid out a process for it. Under the terms of the contract, she was to stay in her position for 120 days with pay and then the termination would be effective. What they did in their haste is, six days later, six or eight days later, they terminated her. They wanted to get rid of her. They had a board meeting, right? I mean, they had a board meeting. That's right. That was like a scheduled board meeting where they came in and they took a vote to terminate her, right? I believe it was a specially called board meeting. It doesn't seem very random. I mean. No, it's not. And they had all the opportunity in the world to give her a hearing and they did. But here's my question. It seems like there are two ways that you could interpret what they did, right? You could, one, interpret that they knew that she was not intending, that she had not resigned, right? And decided to fire her. That's one way to look at it. Or the second view is that the board misunderstood and thought that she was resigning and just kind of affirmed that with their vote, right? Do you agree that there are two ways that you could look at this? I do, Your Honor. But I think it's very important that our complaint alleges that they were told this is not an immediate resignation. So that's actually, you anticipated my question, but I want to be very specific about it, which is in which paragraphs of your complaint do you specifically allege that the board knew that your client was only intending to resign and had not actually resigned? I would have to get the complaint to give you the specific paragraph, but it's in there. I mean, it's her counsel— You're welcome to grab it. Ma'am?  Paragraphs 19 and 20. So you think that's enough to show that they knew that she had not resigned and was only stating a desire to resign in the future? Yes. I mean, in a perfect world, what would have happened is they gave her a hearing and said, look, guys, we've got a contract that governs this. She's got to stay in office for 120 days—not in office, in her job for 120 days with pay. But that's not a benefit to her, is it? That's a benefit to the board. As I understand that contractual provision, that's so if she resigns, they have the right to say, well, we still need to keep running these schools, so you need to stay 120 days. That's not any payout provision of a 120 days in the event that she resigns. I take a look at it as the four corners of the document. It doesn't say whose benefit it's for. If it is—I think you could say it was for her benefit. She has to wrap up her affairs. What she has to do to wind down her position. I mean, it says, quote, she, quote, shall be entitled, end quote, to the salary and blah, blah, blah, blah. And then it says up to, quote, the effective date of termination, end quote. So did she set an effective date of termination in her email? She did not. But it specifically says for a period of 120 days. Right. So, I mean, the effective date of termination couldn't have been easily established. Right. And that's what she said in her letter. She said, this is my intent to resign. Let's get together and iron out the details. But no, they terminated her. I have a question about, so we've been talking about the procedural due process claim, but you've also got a contract claim and a conspiracy claim. Right. The contract claim seems obviously barred by sovereign immunity. Do you disagree with that? Oh, it's a tough argument for me. I'll admit that. On the conspiracy claim, what's your best argument that you can bring a conspiracy claim against the board? Well, obviously, if it's an underlying violation, then there's no conspiracy. But the board has argued that the inter-conspiracy doctrine applies where a board can't conspire with itself. Our argument is the board members were acting illegally outside of the Open Meetings Act of Alabama to make this happen. And there are some exceptions to inter-conspiracy doctrine if illegal acts have taken place. With regard to the sovereign immunity issue, there are exceptions to the bar to claim under sovereign immunity, aren't there? Yes, sir. Six exceptions. That's right. If you'd argue exception number six, wouldn't that apply? I'm arguing that one in three apply, a ministerial act and a legal duty. Well, one in three don't apply because you're seeking money damages. If you'd argued exception six, wouldn't that one apply? Are you talking about declaratory relief? It could, but it still doesn't resolve our issue. I think it can only be resolved through 1983. I think that's the proper vehicle here. I see I'm out of time, but I really wanted to discuss the Fetner case, but I guess I can do that on my rebuttal. All right. Thank you, Mr. Fuller. You've reserved some time. Mr. Green. May it please the Court, Wilson Green and my co-counsels Carl Johnson for Dothan City Schools and the board members. To allege a proper 1983 violation, you've got to allege three things, a deprivation of a cognizable property interest and, of course, the failure to provide the process to redress that deprivation. And we're missing all three in this particular case. We start with, obviously, is there a deprivation? And as we've submitted on the briefs, and obviously we've, really our focal point of this whole case is she resigned. A four-page, single-space memorandum that is a valedictory address and explaining what she had done over the last several years and then saying at the conclusion, at the apotheosis of the whole thing, I intend to resign. Please tell me who to hand off the reins to. God bless and goodbye. There's no time. There's no invocation of the 120 days. Its only reasonable interpretation is to be read as an immediate resignation. Now, you hear this talk about the 120-day trigger, and that's an interesting argument because I would submit to the court that Dr. Edwards is catching herself going and coming with that because if their contention, as it is in the complaint, that she was invoking paragraph 18 of her employment agreement at that point and triggering that 120 days, that paragraph 18 of her employment agreement, which is also paragraph 18, coincidentally, of her complaint, specifically applies only if Dr. Edwards is terminating the contract, which means that by invoking paragraph 18 of the employment agreement in her complaint, she is having to admit that she was resigning and terminating her own employment under paragraph 18 of the contract. So it's internally inconsistent, I would submit, for Dr. Edwards to say, I wasn't really resigning, but I'm invoking paragraph 18, and I think that's one of the core problems with their position on that. The court reached that determination after looking at not just her complaint, accepting the allegations of her complaint as true, but also the minutes of the meeting of the school board, her letter of resignation, and her contract. Why isn't it premature to resolve this issue at the pleading stage rather than later at summary judgment? Several things. One, those documents, particularly the contract and the resignation memo, are referred to in the complaint. So they're before the court without, they're a part of the complaint by case law. Two, they were brought before the court. They weren't attached to her complaint. They were not attached to her complaint, but they're referred to in her complaint. And number two, there was no objection made, and there's no objection made on appeal to those being properly before the court. So any argument about those not properly being before the court is procedurally waived. So they're properly before the court, and everyone knows those documents are what they are. They document exactly what we're dealing with. So there's no deprivation based on that. We're dealing with a resignation, not a deprivation. What about, what about the argument, though, I mean, and this is just based on the complaint. I mean, the complaint says, look, she gave her notice to resign, and it seems like this issue about deprivation and whether there's a cognizable property interest come down to whether she had, like, the right to serve 120 days after providing her notice, right? So what, I mean, what do you say about that? How do you interpret the contract given that it does say that she's going to be entitled to continue being paid until the date of termination? I would say a couple of things about that. Number one, her allegation in the complaint, the property interest she is identifying in her complaint is not the 120 days. It is her right to continued employment. That's why she alleges damages of over half a million dollars. She's claiming entitlement to the remaining two and a half years on the contract. So that's the first problem with that. I would agree with you that, Your Honor, that that is the way the claim is presented. But when the claim is really put into the structure and the skeleton of a 1983 claim, the property right that's being alleged is the right to continued employment. Yeah, okay. Let's just say continued employment for some period of time. I mean, it seems like to get, to win your motion to dismiss, you would have to show that she had no right to continued employment at all, right? I don't agree with that because that ultimately leads to the question of post deprivation remedies, which I'll certainly move to momentarily. But the point here, though, and there's a footnote actually in the district court's opinion, footnote five, which specifically says she's not relying on entitlement to a benefit of employment. They've never challenged that on appeal. They didn't challenge that in the district court. So I would agree with you that at one level, we could be talking about the 120 days, but that's not how the plaintiff framed the complaint. That's not how the district court understood the complaint. And even on appeal, the plaintiff is not challenging that and saying, oh, no, I'm only claiming 120 days. So I think while you and I might see it that way, that's not how the plaintiff is framing the complaint. And I think that makes it different. So there's no deprivation. Number two, and this is candidly a question we didn't really brief, but I think it's important for the court to think through on this because there's some case law from this circuit on the question. Does she have a cognizable property interest for purposes of 1983? Superintendents under Alabama law don't have tenure or anything else. Their rights are determined by the four corners of that contract. And there's plenty of case law from this circuit. There's the laundry service cases, laundry service one and two. They're both cited actually extensively in a case from 1993. I agree that that would actually be an important thing to consider, but isn't that an entirely different argument than what you've been saying? Like, as you said, you didn't brief it. And that seems to me to be she didn't have a property interest because of the nature of her position seems to be a pretty separate argument. It is. It's an alternative. It's another essential element. They've got to plead and they haven't pled it because under Alabama law, she does not have that right. And under this court's precedent, a contract interest is not a sufficient- Haven't you guys forfeited that though by not raising it until today? We're the athlete. And the court can affirm on any ground. But I think it's an important question because when we get to Fetner, it may be a way to deal with Fetner and to distinguish- You didn't raise that at the district court either though, right? We didn't. That's right. Which means that she didn't have any chance to put evidence in that would oppose that argument, right? Or make arguments that would push back on that argument. Perhaps not. But no one has disputed, no one has disputed that her rights are dictated by the contract. And so the legal question is a pretty sterile, I would say, legal question is to whether rights under a contract rise to the level of a sufficiently protectable property interest for purposes of 1983. The Key Harbor case, 987 Fed 2nd, 723, clearly says not. And so that's a real problem, I think. It says, this is what Key Harbor says, the existence of an enforceable contract with a state or local government entity does not rise to the level of a constitutionally protected property interest. So I think that's an additional problem here. Now, moving ultimately, though- Was Key Harbor an employment case? No. Okay. It's not. Well, could you talk about, yeah, could you talk about Fetner? I mean, I think- Absolutely. I mean, I'll just, I think that at least the second, or I guess what you would say, you know, maybe this is the third- Yeah. Fetner seems kind of dispositive. I would disagree. I know, I know that comes as a shock. I think there's an, it's an interesting sort of walkthrough with Fetner. The real question here, let's start with this, Dr. Edwards has never disputed that she's got a post-deprivation remedy, okay? She's got a post-deprivation remedy and has chosen not to exercise it. So we start with that. The question then on- What's her post-deprivation remedy? We briefed that in our red brief. It's to Board of Adjustment. It is also an action, as your Honor pointed out in the questioning to my colleague, under Allen v. Graham- She doesn't have a post-deprivation remedy if Alabama is bound by the sovereign immunity. Well, there is an exception under Allen v. Graham. She could bring a claim in mandamus against board officials to compel the performance of an act. What she cannot do is what she did in count three of the complaint, which is to sue under breach of contract for money damages in a circuit court. You can't do that. So there are actually multiple avenues of remedies that she has chosen not to pursue. They are seeking a writ of mandamus? That's right. There's a remedy in mandamus under Allen v. Graham, yes. So the ultimate question, and to get to Fetner, this is really where the rubber meets the road, that the only question here is whether the- There's no question the post-deprivation remedy is available. The only question is, is a pre-deprivation remedy required and how does Fetner sort of get into all of this? And I think we have to start with, obviously, Peratt extends to negligent acts. If the deprivation is the result of a negligent act that's unforeseeable, then you get into the adequacy of the post-deprivation remedy takes care of the process. Hudson, 1987, Hudson v. Palmer extends that even to intentional acts, which I think is Fetner is 1987, Hudson, excuse me, is 1984, 1987 is the Fetner decision. The Fetner decision contains this statement, in contrast to the situation in Peratt, the injury to Fetner's property interest was caused by a conscious and deliberate act of the city's highest governing board. Now, I'll just be candid with the court on this. I don't think you can reconcile that with Hudson. There is no citation to Hudson anywhere in the Fetner opinion, and that's obviously a real problem. I don't think this court has to reach that. I don't think you have to get into that ultimately, but I think it's a real problem. The citation after that sentence in Judge Vance's decision, and I hate to, since he's a fellow Alabamian, I hate to point that out, but it's a miss, I'm afraid. What he cites is Pembauer v. City of Cincinnati, which is a case about Monell liability. It has nothing to do with this PDP issue we're talking about. So here's what I would say. You can't reconcile that with Hudson v. Palmer. Hudson v. Palmer clearly says the Peratt rule applies to intentional acts. So that analysis of Fetner is wrong. Second, this court in McKinney v. Pate, in an en banc decision, sets out, resets the table entirely for not only the elimination of substantive due process in this kind of context, but the establishment of procedural due process and the way you interpret Peratt and Hudson in that context. In McKinney, this is what the court said. The precedent established by Peratt is unambiguous. Even if McKinney suffered a procedural deprivation at the hands of a biased board at his termination hearing, he has not suffered a violation of his procedural due process rights unless and until the state of Florida refuses to make available a means to remedy the deprivation. And then concluding, it says, under Peratt, only the state's refusal to provide a means to correct any error resulting from the bias would engender a procedural due process violation. Yeah, but isn't that, isn't, I mean, and so I think this is a really interesting issue. So isn't, aren't those cases basically saying that the problem in those cases is the bias, like sort of an individual animus that's going on, whereas here he's arguing, no, it's, I mean, he's saying, yeah, they're biased against me, they hated me, but he's saying, all you had to do was give me the process that I was entitled to. And isn't, doesn't that make this case a lot more like Fetner than, than a case where like a prison officer, you know, destroys someone's man? I would say this, after McKinney, the, the court, the, this court has not really applied McKinney in the way that Your Honor is distinguishing it. There's Bell v. City of Demopolis from 1996, and in Bell v. City of Demopolis, the court is basically saying that the only way you really attack a pre-deprivation remedy is with a facial attack. In other words, that the entire system that is in place by the state for the pre-deprivation remedy is just categorically wrong and, and, and, and will not redress the grievance. Otherwise, your post-deprivation remedy is adequate as long as it can be provided. And so what I would say, I would say that, number one, that Bell v. City of Demopolis deals with this, and I would say, secondly, because my time's running short and I do want the court to be aware of this, there's another case from this court after McKinney v. Pate that deals with how to struggle with Fetner in light of McKinney v. Pate and in light of Hudson, and it is Kenney v. Shores, 77 Fed 3rd, 378, a panel decision from 1996. And footnote one in that opinion goes on at length talking about this facial versus as discussion that I'm talking about that's referred to in Bell v. Demopolis, but it specifically says in that case that the district court, I'm sorry, I'm out of time, if I could just finish my sentence, in that case it specifically says that the district court in Fetner had misconstrued what, what the term impracticability means under, under the Peratt, Hudson, and, and, and Zinnerman v. Birch line of cases. Thank you, Your Honor. Thank you, Mr. Green. Mr. Fuller, you have reserved some time for rebuttal. Thank you. Even Peratt says if you can provide pre-deprivation process, then you do it, regardless if there are post-deprivation remedies. The only reason Peratt and Hudson exist is because of the specific facts of those cases. It was impossible to give pre-deprivation process when a prison guard destroys an inmate's property. Think about it. Is a writ of mandamus a post-deprivation remedy that would have been available to visit Edwards? Yes, sir. But, again, post-deprivation remedies do not matter if pre-deprivation remedies should have been allowed, was practicable, and it is here. They had plenty of time. The next order of business on the, in the meetings of that, that specially called meeting was to install the next superintendent. That was their next order of business, and he's still there today. They had plenty of time to sit down and say, look, let's look at this contract. Let's give her a hearing. No. They wanted to get rid of her, and in their haste, they stomped on her due process rights. So, what is your response to the argument that she did not have a property interest in this job based on the nature of her contract? I think it's ridiculous, honestly. I've never thought I'd be arguing that today. I mean, she has a clear, 16-12-1, Code Alabama delegates the authority from the state to boards of education to appoint and contract with superintendents, and there, in my mind, that creates a protected, constitutionally protected right of property interest. Even though she's got a, even though there's a contract that binds the parties? Right. Yes. And sure, the contract will dictate how the employment goes, and that's, you know, part of our argument is that all they had to do was follow the contract, and we wouldn't be here today. So, what is it that you are saying that the contract guaranteed her? What am I saying? The contract guaranteed her? Right. Employment. I mean, was it, was she allowed to be employed forever? Was that the mandate of the contract, that there was no way that the board could fire her? No, it was five years and four months. She could be removed, the statute says, for, you know, misconduct and a litany of other things. And with a hearing, just like any other protected property right, I think what we... What if the board just thought, and we won't make it her, we'll make it someone else, you're not considering anything here, but let's say the board, at some point, you know, test scores had gone down and, you know, they were just ready to say goodbye to the superintendent. What would a contract like this require the board to do? Well, if they terminate her, you could say if the scores were bad enough and this, that, and the other, that it's for cause. No, not even for cause, just, you know, it's not you, it's me, it's just not working out. Because wasn't this, was this a, could, can a person with this contract only be fired for cause? No, unless you give her a hearing and a list of violations or problems beforehand. Would that be for cause, if you're giving violations? That sounds a lot like for cause. In most at-will employment relationships, it's just, we don't really think it's working out anymore. It's, you know, nothing particularly against you, but we just are allowed to fire you. I think I misunderstood your question. Yes, I think you have a term-specific contract, five years, four months in this instance. Employment relationship, right? This was not at-will? Excuse me? This was not an at-will employment contract? Right. Right. That's the problem with the fact that this is just being brought up, is that I don't know. So, you know, if we're really going to decide this question, we probably want to hear from, have briefing on this, which I'm not suggesting we're doing, but it's an interesting time to be having this debate. I just don't think you can reconcile Fetner with Hudson and Perot. Because the facts are so starkly different. And which set of facts in those cases is more like this case? It's clearly Fetner. Clearly. You had a board that consciously and deliberately terminated someone without a hearing. You have a dispute as to whether it was a resignation or termination. We've made that factual allegation in our complaint. I just think the Fetner case is on point here. I'm sorry to take this over, if I may. I just do have one question about Fetner. Isn't one difference between this case and Fetner that in Fetner there was no contention that the authority misunderstood? In Fetner, the person was given a choice, either you resign or we will terminate you. Isn't that an important difference between that case and this case? It says that in the beginning of the case, but then apparently the mayor or the chair of the city council called Fetner, who's the chief of police, and said, you can either resign or we're going to fire you tonight at this meeting. That's different, right? Than a contention that we thought you resigned and we accepted it? No. No. They officially terminated him at the city council meeting. But then after the fact, tried to say, well, he had resigned before that. All right. Thank you, counsel. Thank you. Court is in recess until 9 o'clock tomorrow morning.